UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN L. MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00552-JRS-DLP |
| ) | |
| SAMUEL J. BYRD, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Kevin L. Martin alleges that the defendants, Dr. Samuel J. Byrd and Health Service Administrator Kim Hobson, were deliberately indifferent to arthritis in his right hand which led to his hand being permanently damaged. Before the Court is the defendants' motion for summary judgment. Dkt. 54. Mr. Martin, a restricted filer, has not opposed the motion. For the reasons explained in this Order, the Court grants the defendants' motion for summary judgment.

**I.
Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot

weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The consequence of Mr. Martin's failure to respond is that he has conceded the defendants' version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see* S.D. Ind. Local Rule 56-1(b) ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the standard for assessing a Rule 56 motion, but it does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II.
## Factual Background

The following facts, unopposed by Mr. Martin and supported by admissible evidence, are accepted as true. At all times relevant to this action, Mr. Martin was housed at Wabash Valley

Correctional Facility (WVCF). Both defendants are employed by Wexford of Indiana, LLC, which provides health care to inmates at WVCF.

On August 16, 2018, Mr. Martin submitted his first healthcare request form (HCRF) stating that his hand was in pain and that he would like to be seen by medical staff. Dkt. 56-2 at 2; dkt. 56-1 at 94. On August 18, 2018, a licensed practical nurse who is not a defendant in this action answered Mr. Martin's request and instructed him to take Tylenol 500 mg, 2 tablets, twice per day. Dkt. 56-2 at 55.

On August 17, 2018, Mr. Martin presented for a nurse visit complaining that his right hand was painful and that his fingers would get stuck in an extended position. The nurse, not a defendant in this action, noted that she would email Dr. Byrd for further orders. *Id*. at 9-11.

On August 27, 2018, Mr. Martin submitted a HCRF regarding his right hand. On August 30, 2018, a nurse responded that he was seen on August 17, 2018, for right hand pain and the doctor was notified for further orders. *Id*. at 56.

On September 4, 2018, Mr. Martin was again seen by a nurse for complaints of arthritis in his right hand. The nurse provided him with hand exercises to do four to six weeks and noted that she contacted the doctor and that the pain reliever Mobic was ordered. *Id.* at 12-14.

On September 26, 2018, Mr. Martin submitted a HCRF complaining about pain in his right hand. On September 29, 2018, a nurse responded to the HCRF stating that Mr. Martin was seen on September 4, 2018, and that he should continue taking Mobic for pain. *Id*. at 59.

On October 1, 2018, Mr. Martin submitted a HCRF about arthritis in his right hand. On October 3, 2018, a nurse responded to the HCRF stating that Mobic was previously ordered, and that Mr. Martin should allow six to eight weeks for full effectiveness of the medication. *Id.* at 60.

On November 14, 2018, Mr. Martin submitted a HCRF regarding arthritis in his right hand.

On November 17, 2018, nursing staff responded to the HCRF stating the physician would be contacted. *Id.* at 61.

On November 20, 2018, Mr. Martin submitted a HCRF regarding his right hand. On December 2, 2018, the HCRF was responded to stating that Mr. Martin had been educated on arthritis and that he should continue taking Mobic. *Id.* at 62.

On December 2, 2018, Mr. Martin was seen for a nurse visit for complaints of pain in his right hand. On examination, his hand had no tenderness, weakness, discoloration, numbness or swelling, but he did have pain with movement. His range of motion was within normal limits. He was again educated about arthritis and chronic pain and was instructed to use a warm compress or keep his hand warm, if possible, and to continue taking Mobic. *Id.* at 15-17.

On December 22, 2018, Mr. Martin submitted a HCRF regarding his right hand. On December 26, 2018, the HCRF was responded to stating he would be referred to the doctor. *Id.* at 63.

On December 26, 2018, Mr. Martin was seen for a nurse visit. On examination of the right hand he had no tenderness, spasms, discoloration, numbness, or swelling, but his range of motion was not within normal limits and his hand was weak. The nurse noted he would be referred to the doctor. *Id.* at 18-20.

On January 19, 2019, Mr. Martin submitted a HCRF regarding his right hand. On January 20, 2019, the HCRF was answered stating that he would be referred to the doctor. *Id.* at 64.

On January 28, 2019, Dr. Byrd saw Plaintiff for the first time for his right-hand pain. During the visit, Mr. Martin discussed his grandmother's arthritis as well as triggering of the second and third digits of his right hand for more than six months. He also complained of pain in the joints of his right hand. Dr. Byrd noted that Mr. Martin had no prior x-rays or lab evaluations for

4

his right hand and that Mobic had been ineffective. Dr. Byrd examined the hand and ordered an X-ray and lab work to rule out inflammatory arthritis. He also started Mr. Martin on Cymbalta to treat pain. *Id.* at 22-24; dkt. 56-1 at 100-101. Mr. Martin believes that Dr. Byrd should have also ordered physical therapy at this visit. Dkt. 56-1 at 112.

On February 1, 2019, an X-ray of Mr. Martin's third and fourth digits of his right hand was performed. The radiologist's impression was: 1) no acute bony abnormality of the right hand; and 2) mild to moderate osteoarthritic degenerative changes. Dkt. 56-2 at 4, 25.

On February 11, 2019, Mr. Martin had a nurse visit and his lab and X-ray results were discussed with him. *Id*. at 26-27. Mr. Martin states that he was told that a doctor would later discuss the X-ray results with him, but the medical records do not reflect this. Dkt. 56-1 at 104.

On March 11, 2019, Mr. Martin submitted a HCRF requesting a statement from a doctor or nurse to the Court about his arthritis. Defendant Hobson responded to the HCRF stating that Mr. Martin could request his medical records, but the medical staff would not submit anything to the Court. Dkt. 56-2 at 66.

On March 20, 2019, Mr. Martin submitted another HCRF stating he needed a written notice to the Court about his hand. Ms. Hobson responded to the HCRF stating that the results of the X-ray were reviewed with Mr. Martin on February 11, 2019 and if he had further medical issues, he should submit a HCRF. *Id.* at 67. The March 2019 HCRFs are the only two HCRFs that involved defendant Hobson in this action. All other HCRFs submitted by Mr. Martin were responded to by other medical staff.

On May 20, 2019, and May 21, 2019, Mr. Martin submitted HCRFs related to the arthritis in his right hand. They were answered on May 28, 2019, noting that he had been seen by a nurse for the issue. *Id*. at 68-69.

On May 28, 2019, Mr. Martin was seen for a nurse visit for his right hand. The nurse noted that his last three fingers of his right hand were in a claw like appearance. Mr. Martin stated he was unable to move his fingers freely and that he sometimes experienced sharp pain or tingling. *Id.* at 30-31. That same day, Mr. Martin submitted another HCRF regarding his right hand. On May 30, 2019, the HCRF was answered stating that Mr. Martin was scheduled to see the doctor. *Id*. at 71.

On June 3, 2019, Dr. Byrd saw Mr. Martin for a chronic care visit for osteoarthritis of the right hand. Dr. Byrd noted that Mr. Martin's X-ray confirmed mild to moderate degenerative change at the IP joint throughout his right hand. Mr. Martin complained of significant throbbing pain in his hand most days which was made worse with overuse from writing or gripping objects. Dr. Byrd noted that Mobic, Tylenol, and Cymbalta had not effectively treated Mr. Martin's pain. He doubled Mr. Martin's dose of Cymbalta and advised him to write to medical if the increased Cymbalta did not improve his pain over the next four to six weeks. Dr. Byrd also ordered finger splints for Mr. Martin. Dkt. 56-2 at 33-35; dkt. 56-1 at 106-107.

On June 11, 2019, Mr. Martin submitted a HCRF regarding his arthritis. On June 12, 2019, the nursing staff responded to the HCRF stating that Mr. Martin should continue with the medication as ordered. Dkt. 56-2 at 72. On June 24, 2019, Mr. Martin received two, size medium, finger splints. Dkt. 56-1 at 107.

On July 19, 2019, Mr. Martin was transferred from WVCF to Westville Correctional Facility. As a result, the defendants were no longer involved in Mr. Martin's medical care. Dkt. 56-2 at 6.

On August 9, 2019, Mr. Martin was seen for a nurse visit at his new facility. He complained of pain to the last three fingers of his right hand. The nurse noted arthritic deformity to his knuckle

area. He was educated on alternating ice/heat to help with pain and to purchase pain medication from commissary. Dr. Liaw was contacted and no new orders were received. *Id*. at 45-47. On September 11, 2019, his order for Cymbalta 60 mg daily was renewed. *Id*. at 48.

On September 17, 2019, Mr. Martin was seen for a nurse visit to address his arthritis. The doctor was contacted and ordered two Tylenol 325 mg tablets every 12 hours as needed for Mr. Martin's pain. Mr. Martin was told to continue with the current treatment plan and submit a HCRF if his symptoms did not improve. *Id*. at 49-51.

On September 24, 2019, Dr. Liaw examined Mr. Martin's hand and noted no obvious deformity. Mr. Martin reported being on Cymbalta for the past few weeks without improvement in his pain. Dr. Liaw noted the X-ray from February 2019 showed mild/moderate osteoarthritis, but previous lab results showed elevated rheumatoid arthritis levels. Dr. Liaw's assessment was mallet finger in the fifth digit and arthritis. He noted that there was some concern of rheumatoid arthritis, but the history and exam findings did not align with this conclusion. He educated Mr. Martin on the pathophysiology of the mallet finger, discontinued Cymbalta, and prescribed low-dose Mobic. *Id*. at 52-54.

Mr. Martin currently has no gym restrictions and is able to workout. Dkt. 56-1 at 118. As a result of the arthritis in his dominant right hand, he has trouble sleeping at night, combing and washing his hair, as well as shaving. *Id.* at 120.

### III.
### Discussion

At all times relevant to Mr. Martin's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner

7

receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

The defendants do not dispute that Mr. Martin's arthritis constitutes a serious medical condition. Instead, they argue that they were not deliberately indifferent to it.

Although neither defendant was involved in responding to Mr. Martin's first HCRF regarding the pain in his right hand, the Court notes that Mr. Martin received instructions to take Tylenol for his pain the day after he submitted the HCRF. When he was seen by a nurse less than a month later, he was given exercises to do, and Dr. Byrd ordered the prescription painkiller Mobic. Mr. Martin was evaluated by nursing staff regularly, educated about chronic pain, and given additional instructions, such as applying a warm compress, to address the pain.

Dr. Byrd first saw Mr. Martin at the end of January 2019. Dr. Byrd immediately switched Mr. Martin's pain medication and ordered lab work and an X-ray. A nurse reviewed the results

with Mr. Martin in February 2019. Although Mr. Martin testified at his deposition that he was told Dr. Byrd would go over the results of the X-ray with him, Dr. Byrd's failure to do so does not constitute deliberate indifference. Mr. Martin next requested to be seen by medical staff in May and was seen eight days later. A nurse examined his hand and referred him to Dr. Byrd who saw him within a week. Dr. Byrd increased Mr. Martin's medication and ordered him finger splints. Shortly thereafter Mr. Martin was transferred to a different facility where his new doctor continued the same treatment plan as had been ordered by Dr. Byrd. The new doctor later prescribed Tylenol, then Mobic, both drugs Mr. Martin had previously tried without success while at WVCF.

The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, a plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a course of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). And "[i]f a prison doctor chooses an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Id.* (internal citations and quotations omitted).

Here, Dr. Byrd made reasonable treatment recommendations and adjusted the treatment plan when it failed to alleviate Mr. Martin's pain. There is no evidence that he deviated from professional norms or chose less-effective treatments without exercising professional judgment. Dr. Byrd is therefore entitled to summary judgment.

As for defendant Hobson, the record demonstrates that her only involvement with Mr. Martin's care in this case was responding to two HCRFs in March 2019 that did not seek any medical treatment. Instead, the HCRFs requested that medical staff provide Mr. Martin's medical

9

information to the Court. Defendant Hobson's job did not involve reviewing all incoming HCRFs and she has no memory of reviewing the numerous other HCRFs at issue in this case or otherwise being aware of Mr. Martin's hand issue in 2018. Dkt. 56-3.

Defendant Hobson had no personal involvement with Mr. Martin's medical treatment. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.") (emphasis added/in original). She is therefore entitled to summary judgment.

### III. Conclusion

The defendants' motion for summary judgment, dkt. [54], is **granted**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 1/18/2021

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

KEVIN L. MARTIN
169789
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Emily Kathleen VanTyle
CASSIDAY SCHADE LLP
evantyle@cassiday.com